**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cr-00102-TWP-DML |
| ) | |
| JOSHUA N. BOWSER (01), ) | |
| JAMIE A. BOLINGER (10), ) | |
| VANCE CANNER (12), ) | |
| STEPHEN D. DUFF (15), ) | |
| CHARLES N. ERNSTES, II (20), ) | |
| CHRISTIAN J. MILLER (44), ) | |
| ) | |
| Defendants. ) | |

### ORDER ON MOTION TO SUPPRESS (Dkt. 1627)

This matter is before the Court on Defendant Joshua N. Bowser's ("Mr. Bowser") Motion to Suppress (Dkt. 1627), joined by co-Defendants Jamie A. Bolinger, Vance Canner, Stephen D. Duff, and Christian J. Miller. Specifically, Mr. Bowser seeks to suppress all evidence obtained by the Government directly or indirectly as a result of the Government's interception of telephone conversations of or relating to Mr. Bowser. The Court has considered the briefs of both parties and pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions of law. For the reasons set forth herein, the Motion to Suppress (Dkt. 1627) is **DENIED**.

### I. BACKGROUND

In six separate orders, the Honorable Judge Jane Magnus-Stinson authorized the Government to use wire and/or electronic surveillance in its investigation into the Outlaws Motorcycle Club (the "OMC"). The first order, signed on November 29, 2011, granted the Government authority to intercept wire and electronic communications over cellular telephones

used by Kent Whitinger and Mr. Bowser. The second order, signed on January 5, 2012, granted the Government authority to intercept wire communications over cellular telephones used by James Stonebraker and Mr. Bowser. The third order, signed on February 21, 2012, granted the Government authority to intercept wire communications over cellular telephones used by Mr. Bowser, Hector Nava-Arredondo, Steve Reynolds, and Jamie Bolinger. The fourth order, signed on March 9, 2012, granted the Government authority to intercept wire communications over a cellular telephone used by an unidentified male. The fifth order, signed on March 21, 2012, granted the Government authority to continue intercepting wire communications by Mr. Bowser and wire and electronic communications by Hector Nava-Arredondo. The sixth order, signed on March 29, 2012, granted the Government authority to intercept wire and electronic communications over a cellular telephone used by an unidentified male. In total, the government intercepted 24,009 telephone calls pursuant to orders it had obtained. Mr. Bowser only challenges the orders issued on November 29, 2011, January 5, 2012, February 21, 2012, and March 21, 2012, because he does not believe the wiretaps issued on March 9, 2012, or March 29, 2012, produced evidence related to his cellular telephone.

## II. DISCUSSION

Mr. Bowser contends that the communications and statements obtained from the wiretaps were intercepted in violation of the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"). In support of this contention Mr. Bowser argues that the orders authorizing the wiretaps were facially insufficient because each parrots the language of 18 U.S.C. § 2518(3)(c) and the Affidavits supporting the applications for wiretaps failed to establish the need for electronic and/or wire surveillance because they do not satisfy Title III's requirement regarding the insufficiency of other investigative procedures.

A.     **The District Judge's Order was Facially Sufficient Pursuant to 18 U.S.C. §2518(4).**

While 18 U.S.C. § 2518(1)(c) requires the Government's application for a wiretap order to include a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," the same does not hold true for the district judge authorizing the order. The Seventh Circuit requires the district judge to review the Government's application for a wiretap in a "practical and commonsense fashion" to determine whether the Government has met its low burden of establishing necessity for the wiretaps based on one of the three factors set out in §2518(1)(c). *United States v. Ceballos*, 302 F.3d 679, 683 (7th Cir. 2002) (quoting *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir. 1988)). Once the district judge has determined that the Government has established necessity for the wiretap, she is only required under 18 U.S.C. §2518(4) to specify in her order:

(a) the identity of the person, if known, whose communications are to be intercepted;

(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

Having reviewed the orders authorizing the use of the electronic and wire surveillance in this case, the Court finds that the orders were facially consistent with §2518(4) and therefore

3

were facially sufficient.[1] Specifically, each order complied with requirements of the statute and in each order Judge Stinson found that normal investigative procedures had been tried and had failed, reasonably appeared unlikely to succeed if tried or were too dangerous to employ. The level of detail in each order sufficiently states that the statutory standard has been met, which is all that is required. *See United States v. Soto-Nava*, 2002 WL 432084 (S.D. Ind. 2002) ("what is required by the statute is a determination that the statutory standard has been met, not the sort of detailed factual findings required under Rule 52 of the Federal Rules of Civil Procedure"). As such, the Court cannot find that the orders in question which authorized interception of telephone conversations relating to Mr. Bowser were insufficient.

**B.     The Government Established the Necessity for Wire Surveillance in its Wiretap Applications.**

Next, Mr. Bowser argues the Government should have used less intrusive investigative methods such as undercover agents and search warrants instead of wiretaps while simultaneously recognizing the Government's efforts to employ less intrusive investigative measures such as utilizing paid informants and drive-by surveillance. Here, Mr. Bowser's argument cannot be reconciled with the requirements of Title III or subsequent case law because it is not required that a wiretap be used as a last resort. *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976). The statute does not even require that other investigative procedures actually be tried before an order may be issued for the interception of wire communications. *Zambrana*, 841 F.2d at 1329. The Government only needs to supply a "full and complete statement as to 1) whether or not other investigative procedures have been tried and failed; 2) why those procedures reasonably appear to be unlikely to succeed, if tried; or 3) why other investigative procedures would be too dangerous." 18 U.S.C. § 2518(1)(c). The Government need only establish one of

---

[1] The orders are docketed under seal at 1:11-mc-0129, 1:12-mc-02, 1:12-mc-0018, 1:12-mc-0024, 1:12-mc-0035. and 1:12-mc-0036.

the three criteria and its burden of demonstrating necessity for wiretaps is "not great." *Ceballos*, 302 F.3d at 683.  In each of the Affidavits the Government has met its burden.

### 1.      November 29, 2011, Affidavit

In its Affidavit supporting the November 29, 2011, wiretap application, the Government demonstrated that attempting to infiltrate the OMC using an undercover agent would first, be unlikely to succeed and second, be too dangerous.  November 29, 2011, Affidavit, ¶¶ 122-25.  Mr. Bowser argues that the Government should have used an undercover agent to infiltrate the OMC instead of applying to use the wiretap as an investigative tool.  The Government provided that in order to infiltrate the OMC with an undercover agent, the agent would have to "hang out" with the members for 18 months and receive a unanimous vote of approval for membership from the Indianapolis chapter. Considering the stringent conditions for membership, there is no guarantee that an undercover agent would gain membership into the OMC, and when applying a commonsense review of the application it is reasonable to believe that if tried the attempt would be unsuccessful.  *See Anderson*, 542 F. 2d at, 431 (stating "merely because a normal investigative technique is theoretically possible, it does not follow that it is likely"). Additionally, even if the undercover agent obtained membership, agents had been told they would have to use cocaine in order to acquire Mr. Bowser's trust.  The need for the undercover agent to use cocaine clearly puts his health and safety at risk causing the use of an undercover agent as an investigative procedure to be too dangerous.

### 2.      January 5, 2012, Affidavit

In its Affidavit supporting the January 5, 2012, wiretap application, the Government successfully articulated the need for a second wiretap.  Mr. Bowser argues that the Government only "cut and pasted" allegations from the first Affidavit into its second Affidavit and failed to

explore the option of offering a plea agreement to a fired confidential informant. In its Affidavit, the Government explained that after firing one of its informants, Norvel Terry, for engaging in unlawful activity without FBI approval, they did not approach him with offers of immunity or question him any further because they did not want to risk Mr. Terry leaking information to members of the OMC. January 5 2012, Affidavit, ¶¶ 58(a)-(c). The Government was clearly able to show that the investigative procedure, the use of a confidential informant, had been tried and failed and that using other investigative techniques to procure additional information from Mr. Terry would likely fail and possibly cripple their investigation because Mr. Terry could potentially leak information to those suspected in this crime. This factual basis for the second wiretap application was specific to those circumstances; therefore, the Affidavit was sufficient to validate the necessity of a second wiretap.

### 3. February 21, 2012, Affidavit

Regarding the February 21, 2012, wiretap application, Mr. Bowser repeats his arguments that the Government should have tried to procure information by inserting an undercover agent into the OMC organization, or offering Mr. Terry a plea agreement or immunity in exchange for his cooperation; however, the Government had already established that those methods were too dangerous or reasonably likely to fail if tried. Mr. Bowser goes on to argue that the Government should have simply stopped its investigation and presented its case to a grand jury. The Government's February 21, 2012, Affidavit explained that presenting its case to the grand jury would likely result in the targets of the investigation invoking their Fifth Amendment right to remain silent or simply not cooperating. February 21, 2012, Affidavit, ¶ 126. The Government also explained that granting immunity would not necessarily produce truthful testimony. February 21, 2012, Affidavit, ¶ 126. This was sufficient to show that if tried, utilizing the grand

jury powers to meet the objectives of the investigation would likely fail. Therefore, the necessity for wiretap surveillance was established.

### 4. March 21, 2012, Affidavit

Mr. Bowser repeats his "cut and paste" argument regarding the March 21, 2012, Affidavit, arguing that the affidavit was simply a copy of prior affidavits. The Court does not agree. A review of the 71 page March 21, 2012 Affidavit reveals specific and distinct information not included in the prior affidavits. The March 21, 2012, Affidavit detailed specific reasons why using undercover agents, confidential informants, and interviews had not or could not achieve the goals of the investigation. The Government explained that because the OMC is a close-knit community, members of the organization would either refuse to testify or not testify truthfully to protect themselves and other members of the organization. March 21, 2012, Affidavit, ¶ 71. The Government also explained that seeking out additional confidential informants either with the promise of immunity or a plea bargain would not work because members of the OMC, like Brian Peacock who had been arrested by the Indiana State Police, had already displayed a propensity to give false statements. March 21, 2012, Affidavit, ¶ 69.[2] The March 21, 2012, Affidavit successfully established the necessity for the wiretaps because the Government demonstrated that implementation of other investigative procedures had failed and would likely fail if tried again.

Mr. Bowser's critique of how the Government carried out its investigation fails to show that the Government did not meet the necessity requirement to obtain authorization to use a wiretap. After careful review of the Affidavits in question, the Court finds, as did its sister court, that the Affidavits were sufficient to establish necessity for the use of wiretaps and support the

---

[2] When Mr. Peacock was arrested for possession of cocaine, he provided a false statement to the Indiana State Police.

Government's claims that other investigative procedures were inadequate to meet the investigative objective. Accordingly, because the wiretaps were valid, the evidence obtained as a result of the wire and electronic surveillance will not be suppressed.

### C. An Evidentiary Hearing is Not Necessary

An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue. *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990). Mr. Bowser has not raised any factual disputes; he has only offered that the Government should have used additional investigative procedures. As a matter of fact, Mr. Bowser does not even ask for the hearing for himself; he asks for the hearing on behalf of the Government so that the Government can support the assertions it made in its wiretap application. The Court finds that the Government has adequately supported its assertions through the Affidavits submitted with the wiretap applications. As such a hearing on the matter is unwarranted, Mr. Bowser's request for a hearing is denied.

### III. CONCLUSION

For the reasons set forth above, the Court finds that Defendant Joshua N. Bowser's Motion to Suppress (Dkt. 1627), joined by co-Defendants Jamie A. Bolinger, Vance Canner, Stephen D. Duff, and Christian J. Miller, is **DENIED.**

**SO ORDERED.**

Date: 08/08/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brad Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov

Doris Pryor
UNITED STATES ATTORNEY'S OFFICE
doris.pryor@usdoj.gov

Gwendolyn M. Beitz
INDIANA FEDERAL COMMUNITY DEFENDERS
gwendolyn_beitz@fd.org

Monica Foster
INDIANA FEDERAL COMMUNITY DEFENDERS
monica_foster@fd.org

Brent Westerfeld
bwesterfeld@wkelaw.com

James C. McKinley
ATTORNEY AT LAW
jmckinley@justice.com

Anthony B. Ratliff
DONINGER TUOHY & BAILEY LLP
aratliff@dtblegal.com

Thomas A. Brodnik
DONINGER TUOHY & BAILEY LLP
tbrodnik@dtblegal.com

Gustin J. Raikos
gusto66@hotmail.com

Larry A. Mackey
BARNES & THORNBURG LLP
larry.mackey@btlaw.com

Mark D. Stuaan
BARNES & THORNBURG LLP
mstuaan@btlaw.com

Michael Eugene Allen
ATTORNEY AT LAW
mallenatty@aol.com

Richard Mark Inman
ATTORNEY AT LAW
markinman13@aol.com